## Waterbury Hospital v. Connecticut Health Care Associates et al.

Speziale, C. J., Healey, Parskey, Armentano and Shea, Js.

Argued December 10, 1981—decision released February 9, 1982

*John C. Bullock,* for the appellant-appellee (plaintiff).

*J. William Gagne, Jr.,* for the appellee-appellant (defendant).

Per Curiam. This is an appeal and cross appeal from the issuance of injunctive relief against the defendant. The plaintiff, Waterbury Hospital (hospital), brought an action seeking a temporary restraining order, a temporary injunction, a permanent injunction, monetary damages and such "other further relief as to equity may appertain" against alleged unlawful picketing during a strike by the defendants. The defendants are registered and licensed practical nurses employed by the plaintiff and represented by the Connecticut Health Care Associates, Unit No. 10 (CHCA) and the Connecticut Licensed Practical Nurses Association (CLPNA). Thirty individuals were also named as defendants.

The strike began on November 17, 1980, when nurses established picket lines at all entrances to hospital parking areas and at the entrance to the emergency room. On that same date, after a hearing at which counsel for the defendants were present, the court issued a temporary restraining order against each of the defendants pursuant to General Statutes § 31-112 et seq. On November 20, a hearing to show cause why a temporary injunction should not issue was commenced. At this hearing, motions to dismiss were granted to CHCA and CLPNA for the reason that each defendant was not served in accordance with General Statutes § 52-59. The record indicates that the hearing continued as to all of the named individuals only. Before the November 20 hearing adjourned, the hospital's application for an order to show cause why a temporary injunction should not be issued against CHCA and CLPNA[1] was granted. On November 21, counsel for all parties including CHCA and CLPNA stipulated that the hearing would proceed as a hearing on the issuance of a permanent injunction as prayed for in the complaint.

[1] The record is not clear about the circumstances surrounding the status of CHCA and CLPNA as defendants after the motion to dismiss them as defendants was granted on November 20, 1980. The "Memorandum of Decision on Oral Motion for Temporary Restraining Order," however, dated November 26, 1980, over the trial judge's signature, recites in part the following: "On November 21, 1980, through stipulation of counsel for all of the parties, i.e. The Waterbury Hospital (hereinafter referred to as Hospital), CHCA, Unit 10, CLPNA, and each of the named individual defendants, it was agreed that the hearing would proceed as a full hearing on the issuance of a permanent injunction as prayed for in the complaint and application. CHCA, Unit 10, CLPNA and each of the named defendants has appeared through counsel; the court has jurisdiction over all of the parties. Counsel have agreed that all of the testimony presented in the hearing on the issuance of the temporary injunction is to be evidence in the hearing on the issuance of the permanent injunction."

After a full trial, the court issued a permanent injunction[2] which enjoined and prohibited the defendants from picketing on and within twenty feet from either side of the entrance and driveway of only the emergency room entrance to the hospital. No other entrance to the hospital was affected by the court's order. The hospital has appealed from the court's denial of an injunction against picketing at all of its entrances and the defendants have cross appealed from the court's granting of the injunction which prohibited picketing at the emergency room gate. The strike and the picketing ended on January 6, 1981.

The parties have raised a number of issues relating to the propriety and constitutionality of the court's injunctive relief. They have also claimed that the appeal, in light of the present circumstances, is not moot. We cannot agree.[3] " ' "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36

---

[2] We note that the permanent injunction issued was directed to the "defendants Connecticut Health Care Associates, Connecticut Health Care Associates Local Unit #10, Connecticut Licensed Practical Nurses Association, their officers, members and agents . . . and all others, acting in concert with and otherwise, either directly or indirectly participating with any one or more of them and acting in their aid, cooperation and behalf . . . ."

[3] The doctrine of mootness is applicable to appellate review of decrees and orders relating to injunctions. See, e.g., *Lake Charles Metal Trades Council* v. *Newport Industries, Inc.*, 181 F.2d 820 (5th Cir. 1950); *CEUI* v. *CSEA*, 183 Conn. 235, 439 A.2d 321 (1981); 42 Am. Jur. 2d, Injunctions § 355.

A.2d 22 [1944]; *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 [1974]; *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901 [1973]; *Roy* v. *Mulcahy,* 161 Conn. 324, 328, 288 A.2d 64 [1971]; Maltbie, Conn. App. Proc. § 21. In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law; *Reply of the Judges,* 33 Conn. 586 [1867]; and where the question presented is purely academic, we must refuse to entertain the appeal. *Young* v. *Tynan,* 148 Conn. 456, 459, 172 A.2d 190 [1961].' *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979)." *CEUI* v. *CSEA,* 183 Conn. 235, 246–47, 439 A.2d 321 (1981); see *Delevieleuse* v. *Manson,* 184 Conn. 434, 436–37, 439 A.2d 1055 (1981).

Any decision on the merits of this appeal could not result in any practical relief to either party given the present circumstances of this case. The strike has long since ended and the parties have settled their dispute. The permanent injunction appealed from existed only for as long as the conditions which produced the injunction existed. 43 C.J.S., Injunctions § 6; see *Miller* v. *City of Wauwatosa,* 87 Wis. 2d 676, 686, 275 N.W.2d 876 (1979). In *Condura Construction Co.* v. *Milwaukee Building & Construction Trades Council AFL,* 8 Wis. 2d 541, 546, 99 N.W.2d 751 (1959), the court said: "They [permanent injunctions] are permanent so long as the conditions which produce the injunction remain permanent." Although he spoke for the court in the context of restraining violent union activities, what

Mr. Justice Frankfurter stated in *Milk Wagon Drivers Union of Chicago, Local 753* v. *Meadowmoor Dairies, Inc.,* 312 U.S. 287, 298, 61 S. Ct. 552, 85 L. Ed. 836 (1941), is apposite here: "The injunction which we sustain is 'permanent' only for the temporary period for which it may last. It is justified only by the violence that induced it and only so long as it counteracts a continuing intimidation. Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuation is no longer warranted." In addressing the purpose of an injunction the Illinois Supreme Court stated: "The plaintiff is not entitled to the same measure of protection at all times and under all circumstances. An injunction decree which is entered upon facts which are not of such a permanent character as to be substantially impervious to change, is both executory and ambulatory. It marches along with time. 28 Am. Jur., sec. 314, p. 485." *Illinois Central R. Co.* v. *Illinois Commerce Commission,* 387 Ill. 256, 272–73, 56 N.E.2d 432 (1944); see *Eads Coal Co.* v. *United Mine Workers of America, District 12,* 27 Ill. App. 3d 692, 703–704, 327 N.E.2d 115 (1975).

In this case, the situation that existed at the time of trial upon which the trial court ordered the injunctive relief no longer exists. See *E. M. Loew's Enterprises, Inc.* v. *International Alliance of Theatrical Stage Employees,* 127 Conn. 415, 419, 17 A.2d 525 (1941). The law recognizes that the actions of parties themselves, by settling their differences, can cause a case to become moot. See, e.g., *Heitmuller* v. *Stokes,* 256 U.S. 359, 362–63, 41 S. Ct. 522, 65 L. Ed. 990 (1921); *Nader* v. *Altermatt,* 166 Conn. 43, 56, 347 A.2d 89 (1974); *Spingarn* v. *Landow & Co.,*

342 A.2d 41 (D.C. App. 1975). "A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." *Cote v. Zoning Board of Appeals for the City of Bangor,* 398 A.2d 419, 420 (Me. 1979). Any decision on the merits by this court would validate or invalidate an injunction the basis for which no longer exists. *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 20, 411 A.2d 1 (1979); see *Rosnick* v. *Zoning Commission,* 172 Conn. 306, 309, 374 A.2d 245 (1977). The United States Supreme Court has aptly stated: "This Court will not proceed to a determination when its judgment would be wholly ineffectual for want of a subject matter on which it could operate. An affirmance would ostensibly require something to be done which had already taken place. A reversal would ostensibly avoid an event which had already passed beyond recall. One would be as vain as the other. To adjudicate a cause which no longer exists is a proceeding which this Court uniformly has declined to entertain." *Brownlow* v. *Schwartz,* 261 U.S. 216, 217–18, 43 S. Ct. 263, 67 L. Ed. 620 (1923). "The question is purely academic, and this court is not required to pass upon such questions. Courts will not knowingly determine moot questions, however much both parties desire such determination." *Rosling* v. *Seattle Building & Construction Trades Council,* 62 Wash. 2d 905, 907, 385 P.2d 29 (1963), cert. denied, 376 U.S. 971, 84 S. Ct. 1133, 12 L. Ed. 2d 85 (1964), quoting *State ex rel. Johnston* v. *Tommy Burns, Inc.,* 188 Wash. 263, 264, 62 P.2d 47 (1936); see *Lake Charles Metal Trades Council* v. *Newport Industries, Inc.,* 181 F.2d 820 (5th Cir. 1950); see also 5 Am. Jur. 2d, Appeal and Error § 760.

Notwithstanding the foregoing circumstances, the appellant claims that this case is appropriate for review because "there is rarely an opportunity for full appellate consideration while picketing continues,"[4] therefore placing the matter within the " 'capable of repetition, yet evading review' " doctrine. *CEUI* v. *CSEA*, supra, 249. In *Connecticut Foundry*, supra, we observed that in "the absence of evidence establishing the likelihood of a future strike and subsequent related court action" or in

[4] In this context we note that General Statutes § 31-118 provides: "APPEAL. When any court or a judge thereof issues or denies a temporary injunction in a case involving or growing out of a labor dispute and either party is aggrieved by the decision of the court or judge upon any question of law arising therein, he may appeal from the final judgment of the court or of such judge to the supreme court at any time within two weeks of the entry of such judgment. Such appeal shall not designate the term of such court to which the appeal is taken. Provisions by rule in regard to suspension of time limitations during June, July or August shall not apply to such appeals. At the request of either party, the record shall be printed by the clerk and made available to counsel within two weeks from the completion of such record. The appellant shall file his brief within two weeks from the receipt of the record, and the appellee within one week thereafter. No extensions of time shall be granted to either party for any of the steps required in filing or perfecting such appeal except for illness or other acts of God. Such appeal shall be heard not later than two weeks from the date the appeal is perfected by the filing of such record and briefs with the supreme court, and such appeal shall take precedence over all matters except older matters of the same character."

[5] In *Delevieleuse* v. *Manson*, 184 Conn. 434, 437, 439 A.2d 1055 (1981), we stated that the "capable of repetition, yet evading review" principle was not, in and of itself, a justification for reviewing an admittedly moot case but was merely one factor to be considered when faced with a potentially moot matter. Other relevant factors include: (1) the public importance of the question presented; (2) whether an ongoing program of the state's penal or civil system is affected; and (3) whether the appellant himself could be similarly affected in the future. After considering each of these factors, we cannot say that this case merits review.

the absence of evidence that the underlying labor dispute remains unresolved, the appeal was moot. Id., 21.

A similar observation can also be made in this case. The record demonstrates that the underlying labor dispute has been resolved for about one year. We are not entitled to assume that there will be a strike, accompanied by similar picketing, in the future even though the appellant claims otherwise. Indeed, it would be a disservice to the parties and to the public interest to make such an assumption in view of the resolution of the labor dispute between these parties. At this point in time, such an assumption would be merely an abstract proposition and, therefore, not within the province of our appellate jurisdiction. *Dakota Coal Co.* v. *Fraser,* 267 F. 130, 133–34 (8th Cir. 1920) ; *CEUI* v. *CSEA,* supra, 246–47. Our national labor policy dictates that a cautious approach be taken to injunctive relief and that "such relief should *normally* be limited in scope to apply only with respect to present factual disputes." (Emphasis in original.) *Central Appalachian Coal Co.* v. *United Mine Workers of America,* 376 F. Sup. 914, 925 (S.D.W.Va. 1974). There is no present factual dispute here.

"The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the gov-

ernment of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *California* v. *San Pablo & Tulare R. Co.,* 149 U.S. 308, 314, 13 S. Ct. 876, 37 L. Ed. 747 (1893) ; see *DeFonce Construction Corporation* v. *Connecticut Resources Recovery Authority,* 177 Conn. 472, 474–75, 418 A.2d 906 (1979).

The hospital has also claimed that this case is not moot because of the "possibility of liability" upon an employer's bond which the lower court required as a condition to the issuance of a temporary restraining order. The appellant directs us to *H. O. Canfield Co.* v. *United Construction Workers,* 136 Conn. 293, 70 A.2d 547 (1949), in which this court decided to hear an apparently moot appeal allegedly on the basis that this possible liability on the employer's bond was sufficient to invoke appellate jurisdiction. Even if we assume that the court in *Canfield* did consider the issue of liability on the bond to be sufficient to invoke appellate jurisdiction, we are not convinced that we should reach a similar result in this case.[6]

Finally, the union has cross appealed and challenged the injunctive relief granted to the hospital. The same rationale which rendered the hospital's appeal moot also renders the union's appeal moot. *CEUI* v. *CSEA,* 183 Conn. 235, 249, 439 A.2d 321 (1981).

Accordingly, both the appeal and cross appeal are moot and are dismissed.

---

[6] It does not appear from the record that suit has been instituted on the bond.