BOARD OF EDUCATION OF THE TOWN AND
BOROUGH OF NAUGATUCK *v.* TOWN AND
BOROUGH OF NAUGATUCK ET AL.
(AC 18902)

Lavery, Schaller and Spear, Js.[1]

Argued February 22—officially released July 11, 2000

*N. Warren Hess, III*, with whom was *Franklin G. Pilicy*, for the appellants (defendants).

*Mark J. Sommaruga*, with whom, on the brief, was *Thomas N. Sullivan*, for the appellee (plaintiff).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Joan G. Libby* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

LAVERY, J. The defendants[2] appeal from the trial court's judgment rendered following the granting of the motion for summary judgment filed by the plaintiff, the board of education of the town and borough of Naugatuck (board). The court's judgment invalidated certain 1996 amendments to the charter of the town and borough of Naugatuck. On appeal, the defendants claim that the court improperly determined that (1) the amended charter provision providing that the annual budget may be presented to the electorate in the form of two budget questions (budget amendment) was invalid, (2) the amended charter provision providing that the person elected as mayor shall be a member of the board of education (membership amendment) was invalid, (3) the membership amendment was invalid even though the court expressly found that the amendment was authorized pursuant to General Statutes § 7-193 (b) and (4) the membership amendment was invalid because the mayor's duties are incompatible with his membership on the board, notwithstanding General Statutes § 9-210. We need not address the defendants' claims because our review of the entire record reveals that we do not have subject matter jurisdiction over this appeal.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." 1 Restatement (Second), Judgments § 11. "This court may raise the issue of subject

---

[2] The defendants are the town and borough of Naugatuck; William C. Rado, former mayor; Timothy D. Barth, mayor; the board of mayor and burgesses of the town and borough of Naugatuck; Sophie K. Morton, town clerk; Judy Crosswait, borough clerk; and Ann Hildreth and Jane H. Pronovost, registrars of voters. They are referred to collectively as the defendants.

matter jurisdiction sua sponte. Jurisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial court or here. . . . *Serrani* v. *Board of Ethics*, 225 Conn. 305, 308, 622 A.2d 1009 (1993)." (Internal quotation marks omitted.) *L & G Associates, Inc.* v. *Zoning Board of Appeals*, 31 Conn. App. 12, 13, 623 A.2d 494 (1993). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988)." (Internal quotation marks omitted.) *State* v. *Mack*, 55 Conn. App. 232, 235, 738 A.2d 733 (1999), quoting *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994).

The following facts are relevant to our dismissal of the appeal. In April, 1997, the board commenced this declaratory judgment action against the defendants seeking to have the 1996 amendments to § 3.18 and § 14 of the Naugatuck charter declared invalid and void ab initio. The board's second amended complaint alleged that on or about November 5, 1996, the defendants submitted the following proposed charter amendments, among others, in the form of questions, to the Naugatuck electorate. Question three asked, "Shall the Charter be revised to allow up to (3) three separate budget referendums for both the Town Operating Budget and the Board of Education Budget?" Question four asked, "Shall the Charter be revised to provide that the terms of office for members elected to the Board of Education at the May 1997 election shall be for (2) two years, and that each term which shall expire thereafter shall also be elected for (2) two years?" Question five asked, "Shall the Charter be revised to provide for a nine member Board of Education, one of whose members shall

be the Mayor or his designee, effective at the May 1997 election?"

These questions, the complaint alleged, related to §§ 3.18 and 14 of the Naugatuck charter and the board's responsibility pursuant to General Statutes § 10-220 to manage the public schools. The complaint also alleged that the board is vested with authority to carry out the educational policies of the state in Naugatuck, and that the membership amendment improperly altered the composition of the board, placed a member on the board who was not elected (the mayor), reduced the term of the members of the board and impaired the board's ability to obtain annual funding. The complaint further alleged that § 14 of the charter concerns the process by which the Naugatuck electorate can seek a referendum on the Naugatuck proposed budget, which is comprised of Naugatuck's operating budget and the board's annual budget, and that the budget amendment was invalid.

The complaint further alleged that the defendants failed to follow the statutorily mandated procedures with which a municipality must comply to supersede a special act charter such as the one that serves as Naugatuck's organic law. See General Statutes §§ 7-187 through 7-192.[3] It also alleged that because the defendants failed to comply with the requirements of General Statutes § 7-191 prior to submitting the proposed amendments to the electorate, the amendments to the Naugatuck charter were invalid and without effect. In addition, the complaint alleged that although the defendants knew or should have known that they had failed to comply with the statutory requirements, following the November 5, 1996 election, they took affirmative steps to implement the alleged invalid and illegal

---

[3] These sections of the General Statutes are commonly known as the Home Rule Act.

amendments to the charter. The complaint prayed for a judgment declaring the amended provisions of the charter invalid and void ab initio.[4]

By the early spring of 1998, the parties had filed motions for summary judgment. They also stipulated to the facts underlying their dispute and to the issues to be determined by the court. Because there were no genuine issues of material fact, the court was presented with a question of law. See Practice Book § 17-49. Specifically, the court had to determine the validity of the amendments to §§ 3.18 and 14 of the charter. The facts to which the parties stipulated were, among other things, that the board had standing to bring the action, that the board had complied with Practice Book § 17-55, that the board would not pursue any claim that the defendants had failed to comply with the procedural requirements for a charter revision as required by statute, that the court's ruling on the motions for summary judgment would be dispositive of all procedural and substantive issues, the text of §§ 3.18 and 14 of the charter immediately prior to the November 5, 1996 election, the text of the amended charter provisions subsequent to the election,[5] the board's position with respect to the amended provisions, the defendants' position with respect to the amended provisions, and that there was an actual and bona fide dispute concerning the amended provisions of the charter.

The court's memorandum of decision was filed on September 29, 1998. The court found the following facts to be undisputed. The charter is the organic law of

[4] In its prayer for relief, the board also sought an injunction, which was incidental and ancillary to their claim for declaratory relief. See Clough v. Wilson, 170 Conn. 548, 555, 368 A.2d 231 (1976); Wenzel v. Danbury, 152 Conn. 675, 678, 211 A.2d 683 (1965).

[5] The proposed amendments were presented to the electorate in the form of several questions and, because the vote was in the affirmative, the language of those amendments was incorporated into the charter.

Naugatuck. Section 3.18 of the charter prescribes the number of board members, their method of election and the length of their terms. Section 14 of the charter sets forth the process by which the Naugatuck electorate can seek a referendum on the proposed budget, which includes both the Naugatuck operating budget and the board's annual budget. Sections 3.18 and 14 of the charter were amended by the electorate on November 5, 1996, and the defendants took affirmative steps to give effect to the amendments. The court also found that the board had standing to bring the action and that it had complied with Practice Book § 17-55.[6] The court further found that there were bona fide and substantial questions in dispute concerning the amended provisions of the charter that had led to uncertainty as to the parties' rights and relations, and that the challenge to the amendments presented a live controversy.[7]

At oral argument before this court and in their supplemental brief,[8] the defendants acknowledged that they

___

[6] Standing is a jurisdictional issue. Although the parties stipulated that the board had standing to pursue this matter, the court correctly noted that it had to make its own findings of jurisdictional facts. See *Serrani* v. *Board of Ethics*, supra, 225 Conn. 308.

[7] The court made additional findings that were in substantial compliance with the parties' stipulation of facts before concluding that, as a matter of law, the membership amendment and the budget amendment were invalid.

[8] Footnote 12 of the court's memorandum of decision states: "As indicated in footnote 11 . . . the language of the charter provision presented to the electors in November, 1996, provided that the 'Mayor or his designee' shall be a member of the board. The parties have agreed that the 'designee' language ought to be excised from the amendment, and the court was assured that a *revised amendment will be provided to the voters at the next general election.* Therefore, the court does not rule on this aspect of the amended charter provision." (Emphasis added.) Prior to oral argument before us, the parties were informed that we would inquire as to the court's ruling on a charter amendment that had not yet been approved by the Naugatuck electorate.

At oral argument, we asked the parties to provide supplemental briefs on the following issue: "How does the trial court not address the charter provision of the mayor or his designee being on the board of education rather than a hypothetical charter provision that the trial court, the plaintiff

had not complied with all of the statutory requirements in amending the charter provisions at the November, 1996 election, but claimed that the parties had stipulated that the board would not pursue any claims that the defendants had failed to comply with the statutory procedural requirements for approving the charter amendments.[9] The defendants attempted to correct the deficiencies in the 1996 charter amendment process by engaging in another charter revision process, culminating in the 1998 election. In the appendix to their supplemental brief, the defendants provided a certified copy of the moderator's return for the November 3, 1998 charter referendum, revealing that the electorate had voted on and approved three questions relating to the membership and budget amendments to the charter.[10]

It is now clear to us that the questions before the electorate at the time of the 1996 election have been superseded by a November, 1998 election, which took place after the court ruled on the parties' motions for summary judgment. This turn of events compels us to conclude that the appeal is moot. "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the

and the defendants agreed upon, but which was not approved or voted upon by the citizens of [the Naugatuck]?"

[9] The only valid manner in which a municipality may amend its charter is to comply with the provisions of the Home Rule Act. A municipality may not waive the provisions of the act. See, e.g., *Sloane* v. *Waterbury*, 150 Conn. 24, 28–29, 183 A.2d 839 (1962); *Lacava* v. *Carfi*, 140 Conn. 517, 520, 101 A.2d 795 (1953).

[10] The three relevant questions on the November 3, 1998, proposed charter amendments were as follows: (1) "Shall the charter be revised to provide that, effective at the May 1999 municipal election and all municipal elections thereafter, the terms of office for members of the board of education shall be two (2) years?"; (2) "Shall the charter be revised to provide for a nine (9) member board of education, one of whom shall be the mayor, effective at the May 1999 municipal election?"; and (3) "Shall the charter be revised to allow up to three (3) separate budget referendums for the acceptance or rejection of the town operating budget and/or the board of education budget?"

merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute: 'Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law.' *Harkins* v. *Driscoll*, 165 Conn. 407, 409, 334 A.2d 901 (1973); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union*, 177 Conn. 17, 19, 411 A.2d 1 (1979); (2) that the interests of the parties be adverse; *McAnerney* v. *McAnerney*, 165 Conn. 277, 283, 334 A.2d 437 (1973); *Lipson* v. *Bennett*, 148 Conn. 385, 389, 171 A.2d 83 (1961); (3) that the matter in controversy be capable of being adjudicated by judicial power; *Baker* v. *Carr*, 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); and (4) that the determination of the controversy will result in practical relief to the complainant. *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union*, supra, 20–21; *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36 A.2d 22 (1944)." *State* v. *Nardini*, 187 Conn. 109, 111–12, 445 A.2d 304 (1982). The case before us does not satisfy any of the *Nardini* criteria.

Because the parties had stipulated that the "or his designee" language should have been omitted from the amendment and that a revised amendment omitting that language would be submitted to the voters at the next general election, the court did not consider whether that language, which was contained in the 1996 membership amendment, violated the requirement that all members of the board be elected. At the time the court ruled on the motions for summary judgment, however, the Naugatuck electorate had not voted on the revised membership amendment to the charter, and the court therefore improperly relied on hypothetical facts when it ruled on the validity of the membership amendment. See *Reply of the Judges*, 33 Conn. 586 (1867) (judges decline request of General Assembly to give opinion

as to validity of proposed act). Where as here, "[t]he question is purely academic . . . this court is not required to pass upon such questions. Courts will not knowingly determine moot questions, however much both parties desire such determination." (Internal quotation marks omitted.) *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 252, 440 A.2d 310 (1982).

The court also did not address the alleged procedural irregularities concerning the 1996 election. The defendants, however, conceded that they had not complied with the Home Rule Act and conducted a subsequent charter amendment election to remedy those procedural problems. "The law recognizes that the actions of parties themselves, by settling their differences, can cause a case to become moot." Id., 251.

At oral argument, counsel for the parties skirted the jurisdictional question and urged us to decide the validity of the amendments to the charter. Counsel claimed that the questions presented important public issues and that the taxpayers of Naugatuck were paying the legal fees of both parties. Counsel, therefore, wanted to avoid starting a new action. Although the issues may be important to the residents of Naugatuck, that alone is not sufficient to create subject matter jurisdiction.

Our Supreme Court "has never asserted jurisdiction over a case that would otherwise be moot simply on the ground of the public importance of the question presented. Apart from the numerous cases in which appeals raising serious questions about labor injunctions have been declared moot; *Accurate Forging Corporation* v. *UAW Local No. 1017*, [189 Conn. 24, 26, 453 A.2d 769 (1983)]; *CSEA* v. *AFSCME*, 188 Conn. 196, 488 A.2d 1341 (1982); *Waterbury Hospital* v. *Connecti-*

*cut Health Care Associates,* supra [186 Conn. 251]; *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* supra [177 Conn. 21]; we have held unreviewable questions of importance involving the authority of numerous instrumentalities of government, including the Connecticut Resources Recovery Authority; *DeFonce Construction Corporation* v. *Connecticut Resources Recovery Authority,* 177 Conn. 472, 474–75, 418 A.2d 906 (1979); the insurance commissioner; *State Farm Life & Accident Assurance Co.* v. *Jackson,* [188 Conn. 152, 152–60, 448 A.2d 832 (1982)]; and the juvenile court. *Maloney* v. *State,* 179 Conn. 309, 310, 426 A.2d 288 (1979). In each instance, [our Supreme Court has] expressly concluded that [it] lacked jurisdiction when the principle of 'capable of repetition, yet evading review'[11] was inapplicable." *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 573, 499 A.2d 1158 (1985). The procedural status of this case is unique and cannot be repeated, that is, the 1996 proposed amendments to the charter have been superseded. In addition, counsel for the parties admit that they can commence a new action to resolve any problems with the validity of the 1998 proposed charter amendments.

The appeal is dismissed, the judgment is vacated[12] and the case is remanded with direction to render judgment dismissing the plaintiff's action for mootness.

In this opinion the other judges concurred.

---

[11] See *Weinstein* v. *Bradford,* 423 U.S. 147, 148–49, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975).

[12] Vacatur is an "extraordinary remedy." *U.S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership,* 513 U.S. 18, 26, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994). It is "commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States* v. *Munsingwear, Inc.,* 340 U.S. 36, 41, 71 S. Ct. 104, 95 L. Ed. 36 (1950).